IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANGELE L. CHANG-WILLIAMS, et al.** | * | |
| | * | |
| | * | |
| v. | * | Civil No. DKC 10-783 |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |

**MEMORANDUM OPINION**

Presently pending is Defendant United States of America's Motion for Protective Order. (ECF No. 36). The motion alleges improper *ex parte* communications by plaintiffs' counsel in violation of Maryland Rule of Professional Conduct 4.2, and seeks an Order "prohibiting any and all future *ex parte* contacts with former or current government employees whose actions could be imputed to the United States[1] for purposes of this case." (ECF No. 36 at 12). The motion is ready for resolution, and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, the government's motion will be granted in part and denied in part.

**I. Background.**

On March 30, 2010, plaintiff Angele Chang-Williams filed a *pro se* complaint, on behalf of herself, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*. (ECF No. 1). After obtaining counsel, Chang-Williams filed an amended complaint on February 22, 2011, adding her daughters, Vinele Chang and DeLisia Chang Carpenter, and her mother-in-law, Isla Elaine Washington, as plaintiffs. (ECF No. 19). Plaintiffs allege that the United States

---

[1] The United States specifies that it seeks protection regarding seventeen current and former government employees, listed in the United States' response to Interrogatory No. 2 and in documents produced by the plaintiffs: (1) Col J.M. Reed, USMC (Ret.); (2) Albert A. Washington; (3) Allan Katzberg; (4) LtCol Stephen Crow, USMC; (5) MSgt Bruce Witherspoon, USMC; (6) Sgt Harold Holden, USMC (Ret.); (7) SSgt Fernando Steverson, USMC; (8) MSgt John Charles, USMC (Ret.); (9) LT Joe R. Molina, USN; (10) Sgt Carl R. Ford, USMC; (11) Sgt. Paul Broadnax, USMC; (12) Rita Friga; (13) Linda Williams; (14) Special Agent Robyn Lee Seifart; (15) Ernesto Flores; (16) SSgt. Gerald Gory; and (17) Maj. James Richards, USMC. (ECF No. 36 at 12, n. 4).

negligently failed to protect the Chang family from a shooting attack perpetrated by Marine Corps Sergeant Estabon Eugene, Jr. on November 12, 2002, in which plaintiff Chang-Williams suffered serious gunshot wounds to the face and hand, and Chang-Williams's husband and son were killed. (ECF No. 19 ¶¶ 9, 42, 46–47, 54, 60).

Eleven days before the shooting, on November 1, 2002, Sgt. Eugene committed acts of domestic violence against his wife, Nakeisha Rhea Eugene, who is plaintiff Chang-Williams's niece. (ECF No. 19 at ¶ 24). Sgt. Eugene was arrested by Maryland state authorities, charged with battery, and released on bail allegedly secured by Marine Corps officers. (ECF No. 19 at ¶ 25–26; ECF No. 36 at 3). On November 4, 2002, Marine Corps Major James Richards and Sergeant Harold Holden visited Nakeisha Eugene at the home of another one of her aunts, Ursula Charley. (ECF No. 1 at ¶ 2; ECF No. 36 at 3). The plaintiffs contend that Maj. Richards and Sgt. Holden, acting within the scope of their employment, made promises to protect the Chang family from Sgt. Eugene, and that the Chang family "did not take extraordinary measures for safety" in reliance on those promises. (ECF No. 19 at ¶¶ 17–19). On November 12, 2002, Sgt. Eugene, having purchased a handgun and rented a car, left the Marine Corps Headquarters Battalion in Virginia and drove to the Maryland home of plaintiff Chang-Williams, where he shot Chang-Williams in the face and fatally shot her husband and son, Kelvin and Aldwin Chang. (ECF No. 19 at ¶ 30–35).

The parties are currently engaged in discovery. At issue are past and proposed future *ex parte* communications by plaintiffs' counsel with current and former government employees.

On October 25, 2011, approximately one week before Sgt. Holden's deposition, (ECF No. 38-1), plaintiffs' counsel admittedly engaged in *ex parte* communication with Sgt. Holden. After defense counsel protested via e-mails calling attention to the potential violation of the

Maryland Lawyer's Rules of Professional Conduct, (ECF No. 36-4), plaintiffs' counsel made an *ex parte* telephone call, on October 31, 2011, to Alice Stauffer, who is currently employed as a Behavioral Health Manager within the Family Advocacy Program (FAP) at the Marine Corps Headquarters Battalion. (ECF No. 36-2, ¶ 3). Plaintiffs' counsel asked Ms. Stauffer questions about her work at FAP, the availability of FAP records and documents, "what support was provided to Nakeisha" during the incident, and whether any FAP files indicated "anything about [Sgt. Eugene] and if he said he was going to hurt someone." (*Id.* at ¶ 4).

## II. Standard of Review.

Pursuant to Federal Rule of Civil Procedure 26(c), "a party or person from whom discovery is sought may move for a protective order in the court where the action is pending." FED. R. CIV. P. 26(c)(1). Such orders may include, *inter alia*, "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; . . . [or] (D) forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters." FED. R. CIV. P. 26(c)(1)(A)–(B), (D).

This Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999). When the issue raised involves the Rules of Professional Conduct, this court applies those Rules as adopted by the Maryland Court of Appeals. *See* Local Rule 704. If a Rule of Professional Conduct has been violated, "[f]ederal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 749 (D. Md. 1997).

**III. Discussion.**

It is undisputed that plaintiffs' counsel engaged in *ex parte* communications with Sgt. Holden and Ms. Stauffer. They argue that *ex parte* communication with Ms. Stauffer, a current government employee, was proper due to counsels' obligation to develop evidentiary foundations for the case, and that Ms. Stauffer's statements do not "go to the heart of plaintiffs' theory of liability." (ECF No. 38 at 10). They argue that the *ex parte* communication with Sgt. Holden, a non-party former government employee, was permissible because he was not extensively exposed to client confidences or privileged information. (ECF No. 38 at 2, 8–10). Plaintiffs' counsel states that they also seek to interview other current or former government employees listed in the United States' motion.

**A. Current Government Employees.**

Rule 4.2 of the Maryland Rules of Professional Conduct prohibits an attorney from engaging in unauthorized *ex parte* communication with a represented party regarding the subject matter of that representation.[2] MD. R. PROF'L CONDUCT 4.2(a). If the represented party is an organization, this no-contact rule applies to "each of the organization's (1) current officers, directors, and managing agents and (2) current agents or employees who supervise, direct, or

---

[2] Rule 4.2 states:
 (a) Except as provided in paragraph (c), in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so.
 (b) If the person represented by another lawyer is an organization, the prohibition extends to each of the organization's (1) current officers, directors, and managing agents and (2) current agents or employees who supervise, direct, or regularly communicate with the organization's lawyers concerning the matter or whose acts or omissions in the matter may bind the organization for civil or criminal liability. The lawyer may not communicate with a current agent or employee of the organization unless the lawyer first has made inquiry to ensure that the agent or employee is not an individual with whom communication is prohibited by this paragraph and has disclosed to the individual the lawyer's identity and the fact that the lawyer represents a client who has an interest adverse to the organization.
 (c) A lawyer may communicate with a government official about matters that are the subject of the representation if the government official has the authority to redress the grievances of the lawyer's client and the lawyer first makes the disclosures specified in paragraph (b).

regularly communicate with the organization's lawyers concerning the matter or whose acts or omissions in the matter may bind the organization for civil and criminal liability." MD. R. PROF'L CONDUCT 4.2(b). When the government is the represented party, a lawyer may engage in *ex parte* communication with a government official regarding the subject of the representation if the government official "has the authority to redress the grievances of the lawyer's client." MD. R. PROF'L CONDUCT 4.2(c). Rule 4.2(c)'s official Comment 9[3] clarifies that such *ex parte* communication is limited to "decision makers," and that *ex parte* contact with "any other government personnel" is prohibited.

Counsel's *ex parte* telephone call with current managing agent Alice Stauffer, which counsel acknowledges was about the subject of the representation in this case, (ECF No. 38 at 4, 8–9), was a clear violation of the Rule. The violation is egregious because defense counsel had previously made plaintiffs' counsel aware of a potential violation of the Rule. A protective order prohibiting plaintiffs' counsel from *ex parte* communications with any current government personnel is thus granted.

### B. Former Government Employees.

The Maryland Courts have not addressed the application of Rule 4.2 to *ex parte* communications with *former* employees.[4] However, Comment 6 to Rule 4.2 treats former

---

[3] Comment 9 states:
> Paragraph (c) recognizes that special considerations come into play when a lawyer is seeking to redress grievances involving the government. Subject to certain conditions, it permits communications with those in government having the authority to redress the grievances (but not with any other government personnel) without the prior consent of the lawyer representing the government in the matter. Paragraph (c) does not, however, permit a lawyer to bypass counsel representing the government on every issue that may arise in the course of disputes with the government. Rather, the paragraph provides lawyers with access to decision makers in government with respect to genuine grievances, such as to present the view that the government's basic policy position with respect to a dispute is faulty or that government personnel are conducting themselves improperly with respect to aspects of the dispute. It does not provide direct access on routine disputes, such as ordinary discovery disputes or extensions of time.

[4] Four Maryland cases discuss Rule 4.2, and none addresses former employees. *See Auclair v. Auclair*, 127 Md. App. 1, 30 (Md. Ct. Spec. App. 1999) (holding that the appointment of a guardian ad litem for children in a divorce

employees as "third persons" under Rule 4.4(b), which in turn prohibits counsel from "seek[ing] information relating to the matter that the lawyer knows or reasonably should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection is waived." MD. R. PROF'L CONDUCT 4.2, Comment 6, and 4.4(b). The United States asks the court to also apply to former employees the prohibition in Rule 4.2(b) against *ex parte* communications with current employees whose "acts or omissions may bind the organization for civil and criminal liability."

This court has prohibited *ex parte* communications with former employees "who supervise, direct, or regularly communicate with the organization's lawyers concerning the matter" and who have confidential information regarding the subject of the representation. *See Camden v. State of Maryland*, 910 F. Supp. 1115, 1117 (D. Md. 1996), (plaintiff's counsel engaged in *ex parte* communication with the former Special Assistant to the President of defendant Bowie State University who consulted with the University's administrative officials and attorneys regarding the case and was involved in sending and receiving confidential communications); *Zachair, Limited v. Driggs*, 965 F. Supp 741, 753 (D. Md. 1997) (day-long, transcribed interview with defendant's former general counsel, who had been extensively exposed to confidential information, violated Rule 4.2); *Ag Gro Services Company v. Sophia Land Company, Inc.*, 8 F. Supp. 2d 495, 498 (D. Md. 1997) (counsel improperly interviewed opposing party's former counsel and obtained significant confidential and privileged

---

and custody case did not prohibit another attorney, hired by the children, from communicating *ex parte* with the children regarding the subject of their representation); *Butler-Tulio v. Scroggins*, 139 Md. App. 122, 150 (Md. Ct. Spec. App. 2001) (holding that Rule 4.2 did not apply to *ex parte* communications "between a lawyer and the treating physician of an adverse party who has placed her [own] medical condition in issue"); *Fisher v. State*, 367 Md. 218, 266 (Md. 2001) (holding that defense counsel violated Rule 4.2 when they improperly contacted the plaintiff, a current client, after plaintiff's counsel advised the defense that the plaintiff was unwilling to speak with defense representatives); *State v. Goldsberry*, 419 Md. 100, 132 (Md. 2011) (reversing a Maryland Court of Special Appeals decision to disqualify defense counsel of a co-defendant because the lower court failed to develop a factual record that supported its decision).

information). As noted, Rule 4.4(b) expressly prohibits *ex parte* attempts to obtain protected or privileged information from former employees.

In contrast, the Court in *Collier v. RAM Partners, Inc.*, 159 F. Supp. 2d 889, 893 (D. Md. 2001), declined to find a violation where the *ex parte* communication was with defendant's former manager who had not been exposed to confidential information. *See also Sharpe v. Leonard Stulman Enterprises Limited Partnership*, 12 F. Supp. 2d 502, 508 (D. Md. 1998) (no violation where, in housing discrimination case, plaintiffs' counsel obtained *ex parte* statements from three former rental agents that defendant landlord had instructed them to "steer" African-Americans to certain units); *Davidson Supply Company, Inc. v. P.P.E., Inc.*, 986 F. Supp. 956, 958-59 (D. Md. 1997) (court declined to extend Rule 4.2 to any former employees but also noted that the former employee at issue was not in any event "an attorney or an investigator, but was simply a marketer," and there were no confidentiality issues).

In sum, courts in this District have consistently prohibited *ex parte* communications with former employees who have protected information, but have held that contact with former employees who do not have protected information does not violate the Rule.[5]  In addition, Comment 6 to Rule 4.2(b) specifically directs application of Rule 4.4(b) to former employees, whereas Rule 4.2(b) expressly applies to *current* employees.[6]  There is, accordingly, no basis upon which to apply Rule 4.2(b)'s prohibitions to former employees.

---

[5] Other cases in this District address, but do not decide, the issue. *See The Plan Committee in the Driggs Reorganization Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998) (court noted the need to protect lay witnesses who are unfamiliar with their rights and duties to their former employer); *Rogosin v. Mayor of Baltimore,* 164 F. Supp. 2d at 684; 685; 688 (D. Md. 2001) (court declined to issue advisory opinion regarding future *ex parte* communications with former employees, leaving it to counsel to assess the Rules and the risks of sanctions for engaging in inappropriate communications).

[6] Comment 6 to Rule 4.2(b) and Rule 4.4(b) were adopted effective January 1, 2002, and thus post date all cases in this District which address *ex parte* contact with former employees. *See* Order Approving Proposed Rule changes to Maryland Rules of Professional Conduct 4.2 and 4.4 (Nov. 1, 2001), 28-23 Md. Reg. 2020 (Nov. 16, 2001).

Rule 4.4(b) prohibits *ex parte* attempts to obtain from former employees information that is protected from disclosure by statute or privilege. It does not prohibit *ex parte* communications with former employees merely because their acts or omissions may be imputed to the government. The government's request for a blanket prohibition on *ex parte* communications with former employees, supported only by a general statement that plaintiffs are attempting to impute their acts, omissions or statements to the United States (ECF No. 36 at 12 n.4), sweeps too broadly.

The court need not decide whether plaintiffs' counsel violated Rule 4.4(b) with regard to former employee Sgt. Holder because he has now been deposed and the government seeks only prospective relief, not alleging that plaintiffs intend to rely on any allegedly improper *ex parte* contact with Sgt. Holder. As to other former employees, the limited amount of information provided in the government's motion does not permit the court to determine whether they possess protected information. Counsel may proceed with caution and seek the government's consent to contact these employees,[7] or proceed with *ex parte* communication and risk sanctions for any violations of the Rules of Professional Conduct.

### IV.  Conclusion.

For the foregoing reasons, the United States' Motion for Protective Order is granted as to current employees and denied as to former employees who are not reasonably likely to possess information protected by statute or privilege.

Date: January 25, 2012                                                       /S/
                                                                     JILLYN K. SCHULZE
                                                                United States Magistrate Judge

---

[7] The *Plan Committee* court noted that a "veritable minefield" surrounds *ex parte* communication with former employees. 217 B.R. 67 at 70. If the court were to accept the United States' invitation to rely on cases from other districts, the minefield would be impossible to navigate. Fortunately, as noted, this court need only apply the Rules as adopted by the Maryland Court of Appeals.